# EXHIBIT A

Christopher J. Carcich, Esq. (#020152002)
CARCICH O'SHEA, LLC
401 Hackensack Avenue, Suite 707
Hackensack, New Jersey 07601
(201) 988-1308
Attorneys for Plaintiff, Nicole Aguas

| | |
|---|---|
| **NICOLE AGUAS,**      Plaintiff,<br><br>v.<br><br>**CARTER'S, INC.,**      Defendant. | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY DOCKET NO.**<br><br>Civil Action<br><br>**COMPLAINT** |

Plaintiff Nicole Aguas ("Ms. Aguas" or "Plaintiff"), by way of Complaint against Defendant Carter's, Inc. ("Carter's" or "Defendant"), alleges as follows:

**NATURE OF THE CASE**

1. This is a civil action arising from Defendant Carter's, Inc.'s ("Carter's" or "Defendant") unlawful discrimination and retaliation against Plaintiff Nicole Aguas ("Ms. Aguas" or "Plaintiff") in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("NJLAD").

2. Despite Ms. Aguas' exemplary nine-year record of exceeding performance expectations as the General Manager of two high-revenue retail locations, managing stores that generate over $1.2 million annually each, and consistently surpassing company benchmarks, Carter's terminated her employment based on discriminatory animus and in retaliation for her protected activities.

3. Carter's decision to terminate Ms. Aguas was the culmination of gender-based discrimination rooted in stereotyping about working mothers, implemented through a fundamentally flawed and biased investigation process designed to reach a predetermined outcome, and executed in direct retaliation for her complaints about retaliatory harassment from disgruntled terminated employees.

4. Plaintiff seeks monetary damages, injunctive relief, and attorney's fees for these violations of New Jersey's anti-discrimination laws.

## PARTIES

5. Plaintiff Nicole Aguas is an individual who resides in Carlstadt, New Jersey 07072. At all times relevant to this Complaint, Ms. Aguas was an employee of Defendant within the meaning of the NJLAD.

6. Defendant Carter's, Inc. is a Georgia corporation and a subsidiary of The William Carter Company, with its principal place of business located at 3438 Peachtree Road NE, Suite 1800, Atlanta, Georgia 30326. Defendant operates numerous retail stores throughout New Jersey, including the store locations at Route 4 East & Forest Avenue, Paramus, New Jersey 07652, where Ms. Aguas was employed as General Manager.

7. At all times relevant to this Complaint, Defendant was an employer within the meaning of the NJLAD, employing more than fifteen (15) employees and engaging in an industry affecting interstate commerce.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to N.J.S.A. 10:5-1 et seq.

9. Venue is proper in this County pursuant to R. 4:3-2 because a substantial part of the events giving rise to this action occurred within Bergen County, specifically at Defendant's retail store locations in Paramus, New Jersey, and Ms. Aguas resides in Bergen County.

10. This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business activities within New Jersey, operates multiple retail stores in this state, including the locations where Ms. Aguas worked, employs numerous New Jersey residents, and the acts giving rise to this lawsuit occurred within New Jersey.

**FACTUAL ALLEGATIONS**

**Ms. Aguas' Exemplary Employment Record and Career Advancement**

11. Carter's hired Ms. Aguas as an Unassigned Store Manager on October 20, 2014, with an initial annual salary of approximately $65,000.

12. From the outset of her employment, Ms. Aguas demonstrated exceptional performance, dedication, and leadership capabilities that distinguished her from her peers and earned her rapid advancement within the organization.

13. Based on her outstanding performance and proven management skills, Carter's promoted Ms. Aguas to Side Store Manager in 2015, recognizing her ability to manage retail operations and lead teams effectively.

14. In 2020, Carter's further promoted Ms. Aguas to the prestigious position of General Manager of two locations, a significant promotion that reflected the company's confidence in her abilities and her proven track record of success.

15. At the time of her termination on September 11, 2023, Ms. Aguas earned an annual salary of $79,642, reflecting her substantial value to the organization and her nearly nine years of consistently exceptional performance.

16. As General Manager, Ms. Aguas held comprehensive responsibility for managing two high-volume Multi-Unit Stores, each generating yearly revenue exceeding $1.2 million, representing multi-million-dollar retail operations under her direct oversight.

17. Ms. Aguas' extensive management responsibilities included: recruiting, interviewing, hiring, training, and developing staff to ensure peak performance; leading Visual Presentation Calls for the entire District; training new Store Managers and District Managers throughout the region; managing complex customer relationships and providing superior customer service; ensuring strict compliance with all current state and county regulations; overseeing comprehensive daily operations of two major retail locations; managing substantial monthly supply budgets; and maintaining clean, safe, and welcoming work environments.

3

18. Throughout her tenure as General Manager, Ms. Aguas consistently achieved and exceeded Carter's performance benchmarks, including: maintaining customer service scores that surpassed the company's target goal of 75% in both locations under her management; achieving conversion rates that exceeded the company's target of 50% in both stores; and establishing a reputation for excellence that led to her consistent selection to train new store and district managers due to her extensive knowledge of visual presentation and exceptional operational standards.

19. Ms. Aguas' performance record was so outstanding that she became the go-to manager for training new personnel throughout the district, a responsibility reserved for only the most capable and trusted managers in the organization.

20. Prior to the discriminatory campaign that began in early 2023, Ms. Aguas had no disciplinary issues, warnings, or performance problems of any kind during her nearly nine-year tenure with Carter's.

21. Ms. Aguas's exceptional track record, consistent promotions, salary increases, and expanded responsibilities demonstrated that she was a highly valued employee who met and exceeded all legitimate performance expectations.

**The Pattern of Gender-Based Discrimination Begins**

22. In late 2022 and early 2023, Ms. Aguas began experiencing what would become a pattern of discriminatory treatment rooted in gender-based stereotyping about her role as a working mother.

23. On December 19, 2022, Ms. Aguas brought her son to work during a childcare emergency, a situation that required her to bring him to the store's back-office area while she completed essential work duties.

24. While Ms. Aguas was managing her work responsibilities in the back office, her son inadvertently triggered the store's panic alarm, which resulted in a police response to the store.

25. Rather than recognizing this as an isolated incident involving a childcare emergency that any working parent might face, Carter's management viewed this incident through the lens of gender-based stereotypes about working mothers and their supposed inability to balance work and family responsibilities.

4

26. The February 6, 2023, Final Warning that Ms. Aguas received for this incident was disproportionate and reflected discriminatory animus, as it was tied to her status as a working mother who occasionally needed to address childcare needs.

27. Upon information and belief, male employees and non-mothers who violated company policies in comparable or more serious ways were not subjected to Final Warnings or received more lenient disciplinary actions than Ms. Aguas.

28. The February 6, 2023, Final Warning specifically cited Ms. Aguas for violating Carter's Visitors & Restricted Work Areas Policy by having her son in the back office for "over an hour," language that demonstrated the company's discriminatory focus on her role as a mother rather than any legitimate business concern.

29. This incident and Carter's response to it marked the beginning of heightened scrutiny and discriminatory treatment of Ms. Aguas based on gender-based stereotypes about working mothers.

**Retaliation from Terminated Employees and Ms. Aguas' Protected Activity**

30. In mid-2023, several employees under Ms. Aguas' supervision were terminated for theft-related offenses following investigations in which Ms. Aguas cooperated fully with Carter's management and human resources department.

31. Following their terminations for theft, these disgruntled former employees embarked on a campaign of retaliation against Ms. Aguas, repeatedly contacting Carter's human resources department and an anonymous hotline with false and retaliatory complaints designed to damage her reputation and employment.

32. Significantly, none of these terminated employees had raised any concerns about Ms. Aguas' leadership, management style, or conduct prior to their own terminations for theft.

33. The timing and pattern of complaints from these terminated employees made clear that their allegations were retaliatory in nature and motivated by their desire to harm Ms. Aguas in response to their own disciplinary actions.

34. Ms. Aguas recognized this retaliatory pattern and directly reported her concerns about the harassment and retaliation from terminated employees to Heather Ventresca in Carter's Human Resources department.

35. Ms. Aguas specifically informed HR that the complaints against her were coming from employees who had been terminated for theft and that their allegations were retaliatory and not made in good faith.

36. Despite Ms. Aguas' clear reports about the retaliatory nature of these complaints, HR representative Heather acknowledged Ms. Aguas' concerns but advised her "not to be concerned" and took no apparent action to investigate or address the pattern of retaliation.

37. Ms. Aguas' reports to HR about the retaliatory campaign against her constituted protected activity under the NJLAD, as she was opposing what she reasonably believed to be unlawful, discriminatory, and retaliatory conduct.

38. Rather than taking appropriate action to investigate and stop the retaliatory harassment, Carter's management allowed the campaign to continue. It ultimately used the false allegations from terminated employees as a basis for further discriminatory action against Ms. Aguas.

**The Pretextual "Eavesdropping" Investigation**

39. On or about July 14, 2023, one of the previously terminated employees made an allegation that Ms. Aguas had "eavesdropped" on a private conversation between her District Manager and an Assistant Store Manager.

40. Significantly, this allegation was made by an employee who had been terminated for theft in mid-August 2023, and the complaint about a July incident was only raised after her own dismissal, further demonstrating the retaliatory nature of the allegation.

41. Upon information and belief, the substance of the alleged "eavesdropping" involved Ms. Aguas overhearing a conversation that related to ongoing investigations in which she was directly involved as a manager and witness.

6

42. On September 1, 2023, Carter's initiated an investigation into this allegation, but the investigation was fundamentally flawed, biased, and designed to reach a predetermined outcome rather than to ascertain the truth.

43. During the investigation, Ms. Aguas was asked whether she had listened to the conversation, and she denied any improper eavesdropping, explaining that she had been working on the sales floor during the relevant time period.

44. When HR questioned Ms. Aguas about a text message allegedly related to the incident, she honestly acknowledged that she did not recall the specific details of the message and offered to retrieve it from her phone for clarification and review.

45. Rather than accepting Ms. Aguas's offer to provide the actual text message for review, HR declined to pursue this offer, demonstrating that the investigation was not conducted in good faith or designed to uncover the truth.

46. Most importantly, when Ms. Aguas requested access to security footage that would definitively demonstrate her whereabouts during the alleged incident and prove that she had remained on the sales floor and had not engaged in any improper eavesdropping, her District Manager summarily denied this request.

47. The denial of access to potentially exculpatory security footage occurred on the day of Ms. Aguas' termination, and her District Manager informed her that HR had already finalized its decision based solely on accusations from the previously terminated manager.

48. Carter's refusal to review potentially exculpatory security footage and failure to allow Ms. Aguas to verify the text message undermined the integrity of the investigation and demonstrated that the process was predetermined rather than a fair factual assessment.

49. The lack of an unbiased investigation into the circumstances allegedly warranting termination suggests a predetermined outcome driven by discriminatory animus rather than legitimate business concerns.

**Ms. Aguas' Unlawful Termination**

50. On September 11, 2023, Carter's terminated Ms. Aguas' employment, citing alleged violations of the Code of Ethics based on the eavesdropping allegations.

51. The termination was drafted by HR representative Heather Ventresca while Ms. Aguas' District Manager was on vacation in Italy, and the termination was executed the day he returned, suggesting that the District Manager may have opposed the termination decision.

52. The severity of Carter's response to the unsubstantiated eavesdropping allegation was grossly disproportionate, particularly given Ms. Aguas's nine-year record of exceeding performance expectations and her lack of any prior disciplinary issues.

53. The alleged eavesdropping incident, which remains contested and lacks conclusive evidence, prompted immediate termination despite Ms. Aguas' exemplary performance record that Carter's does not dispute.

54. Carter's termination of Ms. Aguas was pretextual and motivated by discriminatory animus and retaliation for her protected activities, rather than any legitimate business reason.

**Evidence of Discriminatory Intent and Disparate Treatment**

55. Following Ms. Aguas' termination, Carter's swiftly replaced her with a new General Manager without offering the position to internal candidates such as her Assistant Managers, despite their familiarity with the operations and proven capabilities.

56. Upon information and belief, Carter's failed to conduct interviews with qualified internal candidates and instead hired an external replacement without adequate explanation for this decision.

57. Upon information and belief, Ms. Aguas' replacement was male and received more favorable treatment than Ms. Aguas had received for similar or more serious policy violations.

58. Upon information and belief, male employees and non-mothers at Carter's who committed comparable or more serious policy violations than Ms. Aguas were not subjected to Final Warnings or termination, but instead received lesser disciplinary actions or no discipline at all.

8

59. Carter's disproportionate response to the childcare-related incident and the subsequent eavesdropping allegations, combined with the company's failure to address the retaliatory campaign from terminated employees, strongly suggests that the stated reasons for termination were pretextual and that the real motivation was discriminatory animus based on Ms. Aguas' sex and her role as a working mother.

**Damages and Harm to Ms. Aguas**

60. The unlawful termination of Ms. Aguas' nearly decade-long career at Carter's has inflicted substantial financial and emotional harm upon her and her family.

61. Ms. Aguas had relied on her annual salary of $79,642 to support her family and meet their basic living expenses, including housing, childcare, and other necessities.

62. Following her termination, Ms. Aguas was thrust into immediate and ongoing financial hardship, struggling to meet basic expenses without the steady income she had earned through years of dedicated and exceptional service.

63. Beyond the severe economic impact, Ms. Aguas has suffered significant emotional distress, mental anguish, and damage to her professional reputation as a result of the sudden loss of her position and the unjust accusations made against her.

64. The denial of a fair opportunity to defend herself and the predetermined nature of the investigation process have caused Ms. Aguas additional emotional harm and feelings of powerlessness and injustice.

65. Ms. Aguas has been forced to seek alternative employment at lower compensation levels and has been unable to secure comparable management positions due to the circumstances of her termination from Carter's.

66. The discriminatory and retaliatory conduct has caused Ms. Aguas to suffer ongoing anxiety, stress, and other emotional injuries that continue to impact her daily life and well-being.

9

## AS AND FOR A FIRST CAUSE OF ACTION DISCRIMINATION IN VIOLATION OF THE

## NEW JERSEY LAW AGAINST DISCRIMINATION

### (Sex Discrimination)

67. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. The New Jersey Law Against Discrimination prohibits employers from discriminating against employees on the basis of sex, pregnancy, and other protected characteristics.

69. Ms. Aguas is a member of a protected class under the NJLAD as a female employee.

70. Carter's discriminated against Ms. Aguas on the basis of her sex by subjecting her to different terms and conditions of employment, including disproportionate disciplinary action and ultimately termination, based on gender-based stereotypes about working mothers.

71. Carter's conduct was intentional and motivated by discriminatory animus toward Ms. Aguas based on her membership in a protected class.

72. Upon information and belief, male employees and non-mothers in similar situations were treated more favorably than Ms. Aguas, demonstrating a pattern of disparate treatment based on sex.

73. As a direct and proximate result of Carter's discriminatory conduct, Ms. Aguas suffered damages including lost wages, lost benefits, emotional distress, and other injuries.

74. Carter's conduct violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

## AS AND FOR A SECOND CAUSE OF ACTION, RETALIATION IN

## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

75. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76. The New Jersey Law Against Discrimination prohibits employers from retaliating against employees who oppose discriminatory practices or file complaints regarding discrimination.

77. Ms. Aguas engaged in protected activity under the NJLAD when she opposed the retaliatory campaign being conducted against her and reported these concerns to Carter's management.

78. Carter's knew about Ms. Aguas' protected activity and failed to take appropriate remedial action.

10

79. Carter's retaliated against Ms. Aguas for her protected activity by terminating her employment.

80. There is a causal connection between Ms. Aguas' protected activity and the adverse employment action taken against her.

81. As a direct and proximate result of Carter's retaliatory conduct, Ms. Aguas suffered damages, including lost wages, lost benefits, emotional distress, and other injuries.

82. Carter's conduct violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

### AS AND FOR A THIRD CAUSE OF ACTION WRONGFUL TERMINATION IN VIOLATION OF NEW JERSEY PUBLIC POLICY

83. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

84. New Jersey recognizes a cause of action for wrongful termination when an employee is discharged for reasons that violate a clear mandate of public policy.

85. New Jersey has a clear public policy against employment discrimination and retaliation as expressed in the NJLAD and other state laws.

86. Ms. Aguas' termination violated this clear mandate of public policy because it was based on discriminatory animus and retaliation for her protected activities.

87. Carter's termination of Ms. Aguas undermines the public policy goals of eliminating workplace discrimination and protecting employees who oppose such discrimination.

88. As a direct and proximate result of this wrongful termination, Ms. Aguas suffered damages, including lost wages, lost benefits, emotional distress, and other injuries.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nicole Aguas demands that judgment be entered against Defendant, Carter's, Inc., awarding compensatory damages, including economic damages, emotional distress damages, punitive damages, pre-judgment and post-judgment interest, medical expenses, reasonable attorneys' fees, and expenses, and such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all claims and issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Christopher J. Carcich, Esq. is hereby designated as trial counsel pursuant to R. 4:5-1(c).

## R. 4:5-1- CERTIFICATION

Pursuant to R. 4:5-1, the undersigned certifies that, to the best of his knowledge, there are no other matters in controversy in any other court or arbitration proceeding; nor is any action or arbitration proceeding contemplated; nor are other parties required to be joined in this action.

Respectfully submitted,

CARCICH O'SHEA, LLC

By:_____
     Christopher J. Carcich, Esq.

Dated: September 1, 2025

12

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-005877-25

**Case Caption:** AGUAS NICOLE  VS CARTER'S, INC.

**Case Initiation Date:** 09/01/2025

**Attorney Name:** CHRISTOPHER JOHN CARCICH

**Firm Name:** CARCICH O'SHEA, LLC

**Address:** 401 HACKENSACK AVE CONTINENTAL PLZ, STE 707

HACKENSACK NJ 07601

**Phone:** 2019881308

**Name of Party:** PLAINTIFF : Aguas, Nicole

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Nicole Aguas?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/01/2025                                                          /s/ CHRISTOPHER JOHN CARCICH
Dated                                                                                      Signed

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 221-0700
COURT HOURS  8:30 AM - 4:30 PM


                         DATE:   SEPTEMBER 02, 2025
                         RE:     AGUAS NICOLE  VS CARTER'S, INC.
                         DOCKET: BER L -005877 25


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

     DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON MICHAEL N. BEUKAS

      IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     003
AT:  (201) 221-0700 EXT 25645.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:
                                   ATT: CHRISTOPH J. CARCICH
                                   CARCICH O'SHEA, LLC
                                   401 HACKENSACK AVE
                                   CONTINENTAL PLZ, STE 707
                                   HACKENSACK        NJ 07601


ECOURTS
```

**CASE JACKET**

User:Craig Davis

# Docket Number:  BER L 005877 - 25

| Back | | Create Summary Report |

**Case Caption:** Aguas Nicole Vs Carter'S, Inc.

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Bergen | **Case Initiation Date:** 09/01/2025 |
| **Case Type:** Law Against Discrimination (Lad) Cases | **Case Status:** Active | **Jury Demand:** 6 Jurors |
| **Case Track:** 3 | **Judge:** Michael N Beukas | **Team:** 3 |
| **# of Discovery Days:** 450 | **Age of Case:** 0 YR 01 MO 21 DY | **Consolidated Case:** N |
| **Original Discovery End Date:** | **Current Discovery End Date:** | **# of DED Extensions:** 0 |
| **Original Arbitration Date:** | **Current Arbitration Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Date Adjournments:** 0 |
| **Disposition Date:** | **Case Disposition:** Open | **Statewide Lien:** |

| Plaintiffs (1) | Defendants (1) | ACMS Documents (1) | Fees (1) |

Nicole Aguas     (Party No. 1)

**Case Actions**

| Filed Date | Filings | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|---|
| 09/01/2025 | 📎 ✉ | Complaint with Jury Demand for BER-L-005877-25 submitted by CARCICH, CHRISTOPHER JOHN, CARCICH O'SHEA, LLC on behalf of NICOLE AGUAS against CARTER'S, INC. | LCV20252379630 | 09/02/2025 |
| 09/03/2025 | 📎 ✉ | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20252388933 | 09/03/2025 |

Showing 1 to 2 of 2 entries

# EXHIBIT B

Howard M. Wexlerl
HWexler@seyfarth.com
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
Carter's, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE AGUAS,<br><br>      Plaintiff,<br><br>v.<br><br>CARTER'S, INC.,<br><br>      Defendant. | Civil Action No.: _____<br><br>**DECLARATION OF**<br>**SUSAN MIMNAUGH** |

I, Susan Mimnaugh, declare as follows:

1.      I serve as Vice President of Human Resources for Defendant Carter's Retail, Inc. ("Carter's" or "Defendant") and have held this position since September 12, 2018. I make this declaration in support of Carter's' removal of the above-entitled action from the New Jersey Superior Court, Bergen County, to the United States District Court for the District of New Jersey. Based on my role and experience, I am knowledgeable about Carter's' business operations. In my position, I have access to Carter's' business records and New Jersey employee personnel data for certain employees, which Carter's' makes at or near the time of the employment activities referenced, maintains in the normal course of business, and relies upon for a variety of human resources functions. I have personal knowledge of the facts set forth in this declaration, based on

320594063v.1

my capacity as Vice President of Human Resources.  If called upon to testify, I would and could do so competently and truthfully as to all the contents of this declaration.

2.      Plaintiff Nicole Aguas' last known address on file with Carter's is 568 Center Street, Apt. 2, Carlstadt, NJ 07072.  I have reviewed Plaintiff's personnel file indicating this fact.

3.      Carter's is and was at the time of this civil action a corporation incorporated under the laws of the State of Delaware.

4.      Carter's is and was at the time of this civil action, located in the State of Georgia. Carter's corporate headquarters are located in Atlanta, Georgia, where Defendant's high-level officers direct, control, and coordinate its activities. Defendant's high-level corporate officers maintain offices in Atlanta, and many of Defendant's corporate level functions are performed in the Atlanta headquarters. Additionally, many of Defendant's executive and administrative functions, including legal, finance, accounting, and human resources, are directed from the Atlanta headquarters.

5.      Plaintiff was terminated from her employment with Carter's effective September 11, 2023.  At that time, Plaintiff was earning an annual base salary of $79,642.00.  I have reviewed Plaintiff's personnel file indicating this fact.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 20, 2025

_____
Susan Mimnaugh

2

3

# EXHIBIT C

Howard M. Wexler (ID: 014512007)
620 Eight Avenue, 32nd Floor
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

Attorneys for Defendant
Carter's, Inc.

|  |  |
|---|---|
| NICOLE AGUAS,<br><br>                         Plaintiff,<br><br>v.<br><br>CARTER'S, INC.,<br><br>                      Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO.:  BER-L-005877-25<br><br><br>**NOTICE OF FILING OF REMOVAL** |

TO:    Clerk of the Court
           Superior Court of New Jersey
           Bergen County
           10 Main Street
           Hackensack, NJ 07601

**PLEASE TAKE NOTICE** that, on October 22, 2025, pursuant to 28 U.S.C. § 1446(a), attorneys for Defendant Carter's Retail, Inc. (improperly named as "Carter's, Inc.") filed with the Clerk of the United States District Court for the District of New Jersey a Notice of Removal in the above-captioned action.  A copy of the Notice of Removal of this action is attached to this Notice as **Exhibit A**.

Pursuant to 28 U.S.C. § 1446(d), the filing of the Notice of Removal in the United States District Court for the District of New Jersey together with the filing of a copy of the Notice of Removal with this Court, effects the removal of this action, and this Court may proceed no further unless and until the action is remanded.

320584289v.1

2

Dated: October  22, 2025

Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Howard M. Wexler*
Howard M. Wexler
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
HWexler@seyfarth.com

*Attorneys for Defendant Carter's, Inc.*

320584289v.1

3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2025, a true and correct copy of the foregoing NOTICE

OF FILING OF REMOVAL, WITH EXHIBIT A, was electronically filed with the Court via the Court's

NJ eCourts online system, which sent notification of such filing to all counsel of record.


_/s/ Howard M. Wexler_

Howard M. Wexler

320584289v.1